FILED
2015 Jan-22 PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JUDEEN MORRIS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  2:13-cv-01919-HGD |
| ) | |
| CAROLYN COLVIN, ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## **MEMORANDUM OPINION**

This matter is before the undersigned magistrate judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c).  On September 23, 2010, plaintiff, Judeen Morris, protectively filed a Title XVI application for supplemental security income.  This claim was denied on January 12, 2011.  Thereafter, plaintiff filed a written request for a hearing before an administrative law judge (ALJ).  That hearing was held on April 17, 2012.  Following the hearing, the ALJ issued an unfavorable decision finding that plaintiff was not disabled.  (Tr. 15-26).  The Appeals Council refused to grant review.  Consequently, the Commissioner's decision is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

I.      **ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines

whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 23, 2010. (Tr. 17). At Step Two, the ALJ found that plaintiff had the following severe impairments: history of juvenile myoclonic epilepsy, not intractable; history of lumbago without evidence of underlying bony spinal abnormality; depression and anxiety; history of intermittent pancreatitis secondary to alcohol abuse; and history of intermittent medical non-compliance with treatment. (*Id.*).

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

The ALJ then reported that, after consideration of the entire record, plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), secondary to a history of lumbago. He further found that she should avoid concentrated exposure to extremes of heat and cold; no driving commercial vehicles; can perform occasional to frequent stooping, kneeling, crouching, crawling and climbing of stairs and ramps; and no climbing of ropes, ladders and scaffolds. The ALJ further found that plaintiff had the following non-exertional limitations: she can understand, remember and carry out instructions sufficient to perform low semi-skilled tasks in 1-2-3 step tasks; she can maintain concentration, persistence and pace for periods up to two hours sufficient to complete an eight-hour day with routine breaks; requires a low stress job, defined as occasional changes in the work setting; and interaction with the public and co-workers should be casual. (Tr. 19).

At Step Four, the ALJ found that plaintiff has no past relevant work. At Step Five, based on the testimony of a vocational expert (VE), the ALJ found that, considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 25).

Therefore, he found that she was not disabled as defined in the Social Security Act. (Tr. 26).

## II.     Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ failed to properly evaluate her credibility regarding her testimony of disabling symptoms and failed to properly articulate good cause for according less weight to the opinions of plaintiff's treating physician.

Plaintiff claims that the ALJ improperly credited her testimony regarding her impairments. According to plaintiff, she experiences depression and anxiety despite medication which correlated to "feeling bad" approximately 28 days a month. (Tr. 44). She also claims that she experiences anxiety attacks any time she leaves home. (Tr. 46). Although she testified she has not had a grand mal seizure in years, she states she continues to suffer from mini-seizures about once a week. (Tr. 49). She also testified that her back pain has worsened over time. (Tr. 51).

Plaintiff specifically disputes the ALJ's finding that "the record established that when claimant is compliant with her seizure medication and abstained from alcohol, her seizures were well controlled." (Tr. 22). According to plaintiff, the ALJ overlooked or mis-characterized key medical evidence, noting as an example, Dr. Diane R. Counce's October 21, 2010, treatment motes which document plaintiff's report of "shaking," which was described as "mini-seizures," which she alleges occur

mostly at night, about twice a week. (Tr. 248). Plaintiff also notes that her Lamictal medication was increased at that time, indicating that her epilepsy was not well-controlled at that time. (Tr. 249). Plaintiff further points to treatment notes of Dr. Counce from February 2012 in which plaintiff continued to report "staring spells" resulting in a diagnosis of generalized convulsive epilepsy. (Tr. 350).

Plaintiff also alleges that the ALJ mis-characterized the evidence with regard to her depression and anxiety, noting that she has a record of treatment for anxiety going back to 2004 and that, in February 2012, she reported that she sits around the house all day doing nothing and that she has no motivation. (Tr. 349). Thus, plaintiff alleges that the longitudinal evidence contradicts the ALJ's finding that her depression and anxiety are well-controlled.

Plaintiff also asserts that the ALJ mis-characterized the consultative evidence and opinion of Dr. Joyce Bargeron, Ph.D., with regard to the results of her psychological evaluation conducted by Dr. Bargeron on December 8, 2010. At that time, plaintiff claimed to have crying spells, social isolation, feelings of helplessness, decreased concentration and other similar problems. (Tr. 306). Dr. Bargeron opined that plaintiff was "likely moderately to severely impaired by mental conditions." (Tr. 310). Dr. Bargeron further opined that plaintiff "is likely to be able to understand but may have difficulty remembering and carrying out instructions and that her ability to

respond appropriately to supervision, co-workers and job pressures appear to be compromised." (Tr. 311). According to plaintiff, the ALJ did not properly credit these limitations.

Plaintiff further states that the ALJ improperly gave significant weight to the state agency psychologist, Dr. Cryshelle Patterson, Ph.D. According to plaintiff, Dr. Patterson's opinions are not supported by the evidence and are contrary to plaintiff's treatment notes and Dr. Bargeron's opinion. However, plaintiff does not state with any specificity the evidence that is contrary to the opinions of Dr. Patterson.

In addition, plaintiff alleges that the ALJ failed to give proper consideration to her reports of back pain. Although the ALJ found that there was no objective evidence to support plaintiff's claim of back pain, plaintiff asserts that the ALJ improperly ignored her longitudinal history of back pain. She notes that she has been consistently treated by Dr. Counce for what has been diagnosed as lumbago and that Dr. Counce has continually prescribed strong narcotic medication for pain relief.

### III.   Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129,

131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**IV.   Discussion**

A plaintiff's statements of symptoms alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508 (2013) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory

findings, not only by your statement of symptoms"). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can be reasonable expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1291, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). The ALJ does not have to recite the pain standard word for word; rather, he must make findings that indicate that the standard was applied. *Cf. Holt*, 921 F.3d at 1223; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

In this case, the ALJ properly applied the pain standard. He found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 20). In this respect, he found that plaintiff's subjective complaints were not consistent with the record of her treatment history and that her symptoms were well-controlled by her medications. (Tr. 20-23).

Although plaintiff complained that she suffered from mini-seizures about once a week (Tr. 20, 49-50), the treatment notes from Dr. Counce dated August 6, 2009, reflect that plaintiff reported that she had been stable, that she had not had a seizure in two years, and that her medications were effective. (Tr. 256). In April and July 2010, plaintiff again told Dr. Counce that she had not had any seizures. (Tr. 252, 254). Plaintiff returned to Dr. Counce in October 2010. At that time, she advised Dr. Counce that she had applied for SSI and had "mini-seizures." (Tr. 248). However, there is no record that she saw Dr. Counce again until February 2012, a period of 16 months. At that time, she reported "staring spells" but did not specifically state that she had suffered any seizures or mini-seizures. (Tr. 349). The ALJ found it puzzling that plaintiff would report staring spells and not report mini-seizures that she claims to be having on a weekly basis. (Tr.22).

The ALJ also found that plaintiff's seizures were well-controlled when she was compliant with her medication and abstained from alcohol. (Tr. 22). This is based, at least in part, on the fact that in August 2005, Dr. Counce noted that plaintiff did very well on the Lamictal, except when she misses taking this medication. (Tr. 242). The ALJ noted that the records reflect that plaintiff has not had a seizure since 2008. He found that, while plaintiff testified that she had "mini-seizures" once a week, there is no documentation in her medical records of any seizures whatsoever after 2007.

(Tr. 22). There are only plaintiff's subjective complaints and the description of her "mini-seizures" provided by plaintiff's attorney, "Harry." (Tr. 22, 248).

With regard to plaintiff's claim that the ALJ mis-characterized the evidence when he found that she did not have any seizures after 2007, the court notes the evidence supports the ALJ. Plaintiff states that Dr. Counce's October 2007 treatment notes report "shaking" which was described as "mini-seizures." However, these reports are plaintiff's own subjective reports and those of her attorney. (Tr. 182, 248, 312). There is no other corroborating evidence of disabling symptoms. Therefore, this claim is without merit.

Plaintiff also takes issue with the ALJ's finding that she reported occasional staring spells, rather than "mini-seizures," in October 2012. However, Dr. Counce did not document seizures at that time, and plaintiff did not indicate that her "staring spells" were the same thing as her "mini-seizures." (Tr. 250).

Plaintiff's pancreatitis appears related to her use of alcohol. In 2005, she was hospitalized for alcoholic pancreatitis. (Tr. 240). In January 2009, she reported her pancreatitis as stable. (Tr. 260). However, she "went out and celebrated" due to winning her appeal to get into UAB and ended up with pancreatitis in a Florida emergency room. (Tr. 256). She did not report additional flare-ups of pancreatitis in April, July and October of 2010 or in February of 2010. (Tr. 248, 252, 254, 349).

In addition, at the hearing before the ALJ, plaintiff testified that she had not had a problem with her pancreatitis since she quit drinking around 2010. (Tr. 41).

While plaintiff complained of back pain to Dr. Counce on several occasions, there is no evidence that the pain is totally disabling. In May 2009, plaintiff told Dr. Counce that the medication she has been prescribed for this condition "continues to help." (Tr. 258). She did not report any back pain in August 2009 to Dr. Counce and, in April 2010, Dr. Counce noted that plaintiff's "[b]ack pain is controlled with Norco." (Tr. 254, 256). Dr. Counce again noted that plaintiff's back pain medication appeared to be effective in July 2010 and February 2012. (Tr. 252, 349). The ALJ also noted that plaintiff had no underlying cause for her back pain, such as a bony spinal abnormality. As recently as February 2012, plaintiff reported no difficulty walking, no imbalance and no falling. (Tr. 22, 350). Thus, the ALJ did not fail to properly credit plaintiff's reports of back pain.

The ALJ also found that plaintiff's mental impairments were well-controlled by medication. He noted that she had no major complaints for the two years preceding the hearing decision. (Tr. 23). In July 2010, Dr. Counce noted that even though plaintiff was not taking her Prozac because"[s]he ran out," she was doing well and her medications were effective. (Tr. 252). In October 2010, plaintiff reported that she stopped taking her Prozac because she did not think it was helping. She

asked Dr. Counce for a higher dose. (Tr. 248). At that time, she reported depression but no problems sleeping. (Tr. 249). In February 2010, plaintiff reported to Dr. Counce that she did not believe her anti-depressants were effective because she had no motivation. (Tr. 349). However, Dr. Counce did not make any changes to plaintiff's Prozac, Xanaz or Trazadone prescriptions after October 2010. (Tr. 248, 349). Likewise, no mental health counseling or therapy was ever recommended by Dr. Counce. (Tr. 47-48).

Plaintiff alleges that the ALJ mis-characterized the opinion of the consultative psychologist, Dr. Joyce Bargeron, Ph.D. ,who preformed an examination on plaintiff on December 8, 2010. Plaintiff states that the ALJ failed to credit limitations cited by Dr. Bargeron but fails to state this with any particularity.

After examining plaintiff, Dr. Bargeron's Axis I diagnostic impressions were depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; rule out panic disorder with agoraphobia; and rule out attention deficit disorder. She also made an Axis II diagnosis of rule out personality disorder, not otherwise specified. The ALJ noted that Dr. Bargeron assigned plaintiff with a Global Assessment Functioning (GAF) score of 51. A range of 51 to 60 indicates moderate symptoms and/or moderate difficulties in social or school functioning. (Tr. 22).

However, the ALJ noted that certain factors used in determining GAF scores are not necessarily factors used in a disability evaluation. He also noted that, other than an admission as a teenager for behavioral problems, plaintiff has no history of psychiatric hospitalizations and has not had any psychotherapy. In addition, although Dr. Bargeron opined that plaintiff was likely moderately to severely impaired by mental conditions, she also opined that plaintiff was capable of managing financial benefits and functioning independently, despite the fact that she appeared to take a dependent stance. (Tr. 22). The ALJ also observed that Dr. Bargeron opined that plaintiff could likely relate to others without impairment and that, although she might have difficulty remembering and carrying out instructions, she was likely able to understand. This is the only specific limitation assessed by Dr. Bargeron. The ALJ concluded that the GAF of 51 represents additional social, economic and educational factors and does not document serious limitations in mental functioning by plaintiff. (Tr. 22). Thus, the ALJ did not mis-characterize the opinions of Dr. Bargeron and clearly explained the reasons why he did not completely credit those opinions.

Plaintiff also claims that the ALJ improperly accorded significant weight to the opinion of state agency consulting psychologist, Dr. Cryshelle Patterson, Ph.D. The ALJ set out his reasons for doing so as follows:

> The opinions of the state agency consulting psychologist, Cryshelle Patterson, Ph.D., as set out in the Psychiatric Review Technique Form

>at Exhibit 10F, and the Mental Residual Functional Capacity Assessment at Exhibit 9F, have been given significant weight. Although Dr. Patterson did not examine the claimant, she provided specific reasons for her opinions indicating that they were based on the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. Dr. Patterson's opinions are internally consistent and consistent with the great weight of the evidence, which shows that while the claimant has been prescribed medication for anxiety, depression and insomnia, she has had no major psychological complaints, and she has not sought any type of psychotherapy for her reported mental health issues. Dr. Patterson's opinions are also consistent with the evidence that shows that the claimant's mental health symptoms are for the most part well controlled with her medications. (Exhibits 4F & 13F).

(Tr. 23).

The ALJ must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source. *See* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96–6p, 1996 WL 374180 (Jul. 2, 1996). In determining how much weight to give a medical opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization. *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c). Although plaintiff asserts that Dr. Patterson's opinion is not supported by the evidence, she has failed to point to any specific inconsistency.

Dr. Patterson's opinion is supported by the treatment notes of Dr. Counce, which show that plaintiff only sought treatment for her conditions twice during the relevant period and that her symptoms were well-controlled by her medication. The ALJ stated his reasons for relying on the opinions of Dr. Patterson, and plaintiff has failed to show why this reliance is misplaced. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Therefore, this claim is without merit.

Plaintiff also complains that the ALJ should have given greater weight to the opinions of her treating physician, Dr. Counce. In assessing medical evidence, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). It is insufficient for an ALJ to state that he considered all of the evidence when he does not indicate what weight was accorded to the evidence considered. *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985); *see Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."). Even if it is possible that the

ALJ considered and rejected medical opinions, "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

A treating physician's testimony must be given "substantial or considerable weight" unless good cause is shown to not do so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotations omitted). A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (good cause existed where the opinion was contradicted by other notations in the physician's own record).

The ALJ discussed Dr. Counce's opinions and the reasons for giving them little weight as follows:

> Dr. Diane Counce, the claimant's primary care physician, rendered two opinions that are in evidence. In the first one, dated October 7, 2010, she stated that the claimant carried diagnoses of juvenile myclonic epilepsy, anxiety, depression and back pain and that due to her seizures and the potential side effects from her seizure medications, it would be quite difficult for the claimant to sustain gainful employment (Exhibit 4F). She further stated that the claimant suffered from cognitive delays and had difficulty appropriately carrying out tasks and, in combination with her level of anxiety, did not make her a good candidate for the work force. Dr. Counce also noted that the claimant's two narcotic medications for chronic back pain . . . would further affect her thought processes. However, Dr. Counce's treatment records are inconsistent

> with her opinion regarding the claimant's ability to maintain employment. The last time that Dr. Counce's office saw the claimant prior to her October 2010 opinion was July of 2010 (Exhibit 4F). At that visit, it was noted that while the claimant was not taking Prozac, her other medications were effective and she was doing well. It was also noted that the claimant was sleeping well. The claimant did not report any depression or other psychiatric symptoms that day. When she returned in October 2010, she reported that "Harry" was representing her on her SSI case and that she was experiencing shaking which she described as "mini-seizures" (Exhibit 4F). While no notation had been made by Dr. Counce or her office concerning the claimant's cognitive state, a note was made at that October 2010 visit that the claimant was "now applying for SSI and need to consider that meds can have an impact o[n] mental cognition." He claimant did not see Dr. Counce again after that visit until some 16 months later in February of 2012 (Exhibit 13F). The claimant did not make any mention of "mini-seizures" during that visit; instead, she reported occasional staring spells. While the claimant also reported that her anti-depressants were not effective, it was noted that the claimant had no changes and that she reported no side effects from her medications. Dr. Counce rendered a second opinion on February 10, 2012, which was essentially the same as her first opinion (Exhibit 12F). Because of the inconsistencies between her opinion, her treatment records, and the overall evidence in this matter, Dr. Counce's opinions are given little weight, and because her opinions lack supportability and consistency with the record as a whole and there is other and additional medical evidence more consistent with the record as cited herein.

(Tr. 23-24).

Thus, substantial evidence supports the ALJ's determination to give little weight to the opinions of Dr. Counce, based on the fact that her opinions are inconsistent with her own treatment notes and unsupported by the medical evidence.

Finally, plaintiff contends that the ALJ attributed the 16-month gap in her medical treatment to medical improvement. However, she is mistaken. The ALJ was noting that plaintiff's failure to seek treatment for 16 months was not consistent with her allegations of disabling symptoms. The ALJ found that one of plaintiff's severe impairments was "intermittent medical noncompliance with treatment." (Tr. 17). This is consistent with the record and substantial evidence supports this conclusion.

### V.    Conclusion

Substantial evidence supports the ALJ's RFC finding that plaintiff can perform the full range of light work. Plaintiff has failed to show that she is more limited than found by the ALJ. The ALJ properly considered the relevant evidence and properly weighed it in making his decision. His findings provide a thorough and detailed discussion of plaintiff's medical history, testimony, and the record as a whole. Consequently, the ALJ's determination that plaintiff is not disabled is due to be affirmed. A separate order will be entered.

DONE this 22nd day of January, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE